## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| CHRISTOPHER WILLIAMS, through his legal guardian, MARGARET WILLIAMS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **FILED ELECTRONICALLY** |
| v. | |
| EPR PROPERTIES, | |
| Defendant. | |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Christopher Williams, through his legal guardian Margaret Williams, on behalf of himself and all others similarly situated and allege as follows:

## INTRODUCTION

1. Plaintiff brings this action individually and on behalf of all others similarly situated against EPR Properties ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (the "ADA") and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled and/or leased by Defendant ("Defendant's facilities").

2. Margaret Williams is the legal guardian of Christopher Williams, who has a mobility disability and is limited in the major life activity of walking, which has caused him to be dependent upon a wheelchair for mobility (hereinafter, "Plaintiff").

3. Plaintiff has visited Defendant's facilities and was denied full and equal access as a result of Defendant's inaccessible parking lots and paths of travel.

4. Plaintiff's experiences are not isolated—Defendant has systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendant's facilities.

5. In fact, numerous facilities owned, controlled and/or operated by Defendant have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendant employs with regard to the design, construction, alteration, maintenance and operation of its facilities causes access barriers, and/or allows them to develop and persist at Defendant's facilities.

6. Unless Defendant is required to remove the access barriers described below, and required to change its policies and practices so that access barriers do not reoccur at Defendant's facilities, Plaintiff and the proposed Class will continue to be denied full and equal access to those facilities as described, and will be deterred from fully using Defendant's facilities.

7. The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

> [i]n the case of violations of…this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the…modification of a policy….

42 U.S.C. § 12188(a)(2).

8. Consistent with 42 U.S.C. § 12188(a)(2) Plaintiff seeks a permanent injunction requiring that:

a) Defendant remediate all parking and path of travel access barriers at Defendant's facilities, consistent with the ADA;

b) Defendant change its policies and practices so that the parking and path of travel access barriers at Defendant's facilities do not reoccur; and,

c) Plaintiff's representatives shall monitor Defendant's facilities to ensure that the injunctive relief ordered pursuant to Paragraph 9(a) and 9(b) has been implemented and will remain in place.

9. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate….Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

10. The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

11. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

12. Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and

3

prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

13. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

14. Title III and its implementing regulations define discrimination to include the following:

   a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

   b) Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

   c) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

   d) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

15. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

16. The ADA also provides for specific injunctive relief, which includes the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include…modification of a policy…to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## THE REAL ESTATE INVESTMENT TRUST

17. A real estate investment trust ("REIT") is a corporation, trust, or association that owns and operates income-producing real estate in a variety of property sectors and meets the requirements of 26 U.S.C. § 856.

18. REITs receive preferential tax treatment on dividends paid to shareholders and function essentially as pass-through tax entities.

19. To maintain their preferred tax status, REITs are subject to certain statutory limitations in the kinds of activities they may conduct.

20. Because REIT's activities are limited, a REIT is permitted to own 100% of the stock in a Taxable REIT Subsidiary ("TRS"), which have more operational flexibility.

21. A TRS typically provides services to the parent REIT's tenants or own or operate property which would otherwise disqualify the REIT from its nontaxable status.

22. TRS entities are statutorily restricted from performing certain management services in the lodging and healthcare facility sectors. *See* I.R.C. § 856(l)(3). Apart from those sectors, a TRS, on behalf of its parent REIT, may perform a wide range of services such as, *inter alia*, property management, construction services, and operating parking facilities.

23. Defendant EPR Properties is a publicly-traded REIT that, through its subsidiaries and affiliates, owns, manages, leases, and develops entertainment, education, recreation and other retail properties throughout the United States.[1]

24. Defendant, on information and belief, conducts its operations through at least one TRS entity. *Id.* at 86-87 (discussing TRS entity taxable income).

25. Defendant owns and operates a property portfolio of public accommodations that consists of "megaplex theatres, entertainment retail centers, family entertainment centers and other retail parcels…" including "147 megaplex theatres located in 34 states". *Id.* at 2.

26. On information and belief, Defendant owns the properties where Plaintiff were denied full and equal access as a result of inaccessible parking lots and paths of travel.

27. Plaintiff intends to propound discovery that will demonstrate that these properties are under the control and management of Defendant and accordingly will demonstrate Defendant's failure to comply with the ADA.

## JURISDICTION AND VENUE

28. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

29. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

30. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

---

[1] EPR Properties, Annual Report (Form 10-K), at 1 (Mar. 1, 2018) available at https://www.sec.gov/Archives/edgar/data/1045450/000104545018000021/epr-12312017x10k.htm as of June 12, 2018.

## PARTIES

31. Plaintiff is and, at all times relevant hereto, was a resident of Colorado.

32. Plaintiff Christopher Williams, who relies upon a wheelchair for mobility and therefore is a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

33. Margaret Williams is serving as a representative general guardian suing on behalf of Christopher Williams pursuant to Fed. R. Civ. P. 17(c)(1)(A).

34. Plaintiff is a tester in this litigation and a consumer who wishes to access goods and services offered at Defendants' facilities.

35. Defendant EPR Properties is a REIT organized under Maryland law and is headquartered at 909 Walnut Street, Suite 200, Kansas City, Missouri.

36. Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

### I. Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities.

37. Plaintiff visited Defendant's facilities located at 10685 Westminster Blvd, Westminster, CO and 10661 Westminster Blvd, West Minster, CO, including within the last year, where Plaintiff experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and because of other ADA accessibility violations as set forth in more detail below.

38. Despite these risks, Plaintiff plans to return to Defendant's facilities, as Plaintiff lives in Colorado Springs and travels to and around Westminster for shopping, entertainment, and to visit nearby family.  Furthermore, Plaintiff intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of the ADA.

39. As a result of Defendant's non-compliance with the ADA, Plaintiff's ability to access and safely use Defendant's facilities has been significantly impeded.

40. Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities, however, so long as Defendant's facilities remain non-compliant, and so long as Defendant continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities.

41. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of established rights under the ADA.

42. Plaintiff, an individual with a mobility disability who is dependent upon a wheelchair, is directly interested in whether public accommodations, like Defendant, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II. Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to Defendant's Facilities.

43. Defendant is engaged in the ownership, management and development of retail properties throughout the United States.

44. As the owner and manager of their properties, Defendant employs centralized policies, practices and procedures with regard to the design, construction, alteration, maintenance and operation of its facilities.

45. To date, Defendant's centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA by designing, constructing and altering facilities so that they are not readily accessible and usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendant's facilities are maintained.

46. On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendant, and found the following violations, which are illustrative of the fact that Defendant implements policies and practices that routinely result in accessibility violations:

a) 2315 N Federal Hwy, Pompano Beach, FL

   i. The surfaces of one or more access aisles had slopes exceeding 2.1%;

   ii. The landing at the top of the curb ramp had a slope exceeding 2.1%; and

   iii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

b) 15601 Sheridan Street, Davie, FL

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

   iii. The landing at the top of the curb ramp had a slope exceeding 2.1%; and

   iv. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

c) 10685 Westminster Blvd, Westminster, CO

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

   iii. The landing at the top of the curb ramp had a slope exceeding 2.1%; and

   iv. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

d) 10661 Westminster Blvd, Westminster, CO

   i. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%; and

   ii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

e) 325 Sloan Ave, Trenton, NJ

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

   iii. No access aisle was provided adjacent to one or more purportedly accessible spaces; and

   iv. A grate in the surface of an accessible parking space or access aisle had openings that would allow the passage of a ½ inch sphere.

f) 7 Oakbrook Center, Oakbrook, IL

   i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

47. The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendant's facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, caused by Defendant's systemic disregard for the rights of individuals with disabilities.

48. Defendant's systemic access violations demonstrate that Defendant either employs policies and practices that fail to design, construct and alter its facilities so that they are readily accessible and usable, and/or that Defendant employs maintenance and operational policies and practices that are unable to maintain accessibility.

49. As evidenced by the widespread inaccessibility of Defendant's parking facilities, absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated.

50. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendant's network of facilities.

## **CLASS ALLEGATIONS**

51.     Plaintiff brings this class action, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, individually and on behalf of the following nationwide class:  all wheelchair users who have attempted, or will attempt, to utilize the parking facilities at all locations within the United States for which Defendant owns and/or controls the parking facilities.

52.     <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

53.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class.  The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

54.     <u>Common Questions of Fact and Law</u>:   There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make their facilities fully accessible and independently usable as above described.

55.     <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because Plaintiff's interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

56. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

## **SUBSTANTIVE VIOLATION**

57. The allegations contained in the previous paragraphs are incorporated by reference.

58. Defendant's facilities were altered, designed, or constructed, after the effective date of the ADA.

59. Defendant's facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C. § 12183(a).

60. Further, the accessible features of Defendant's facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 CFR § 36.211.

61. The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, and/or that Defendant's facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

62. Furthermore, the architectural barriers described above demonstrate that Defendant has failed to remove barriers, as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

63. Defendant's repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the

accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

64. Defendant's facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

65. Defendant is required to provide individuals who use wheelchairs full and equal enjoyment of its facilities. 42 U.S.C. § 12182(a).

66. Defendant has failed, and continues to fail, to provide individuals who use wheelchairs with full and equal enjoyment of its facilities.

67. Defendant has discriminated against Plaintiff and the Class in that Defendant failed to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

68. Defendant's conduct is ongoing and continuous, and Plaintiff has been harmed by Defendant's conduct.

69. Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the Class.

70. Given that Defendant has not complied with the ADA's requirements to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the class, prays for:

a. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs Defendant to: (i) take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) that Defendant change its policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiff shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing Plaintiff's counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: June 12, 2018                    Respectfully Submitted,

By: */s/ Benjamin J. Sweet*
Benjamin J. Sweet
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243

*Counsel for Plaintiff*